UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SIGHTLINE HEALTH, LLC, | § |
| | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. H-10-4661 |
| | § |
| L. JEFFERSON HAGEMEIER, | § |
| | § |
| Defendant. | § |

**OPINION AND ORDER**

Pending before the Court is Plaintiff SightLine Health, LLC's ("SightLine") Motion to Dismiss Defendant L. Jefferson Hagmeier's Counterclaim and Third-Party Complaint and Brief in Support (Doc. 7), as well as Defendant L. Jefferson Hagmeier's ("Hagmeier") Response in Opposition (Doc. 8), and SightLine's Reply (Doc. 9). Also pending before the Court are Third-Party Defendant William Baker's ("Baker") Motion to Dismiss Defendant Hagmeier's Third-Party Complaint (Doc. 10) and Counter-Defendant T.J. Farnsworth's ("Farnsworth") Motion to Dismiss Counter-Plaintiff Hagmeier's Counterclaim and Third-Party Complaint (Doc. 11), as well as Hagmeier's Combined Response in Opposition (Doc. 16). Upon review and consideration of these motions, the responses, and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Plaintiff SightLine's and Counter-Defendant Farnsworth's motions to dismiss should be granted in part and denied in part, and that Third-Party Defendant Baker's motion to dismiss should be granted.

This is a declaratory judgment case. In early 2005, Farnsworth contacted Hagmeier for assistance in founding SightLine. (Def.'s Countercl. and Third Party Compl. ¶ 9, Doc. 3 at 11.) Farnsworth asked Hagmeier to become a member of the executive team and a member of the board of directors of SightLine. (*Id.*) Hagmeier, however, agreed to join only the board of

directors in exchange for a grant of equity in the company. (*Id.* ¶ 10.) In September 2005, Hagmeier began serving as a director of SightLine. (*Id.* ¶ 11.) On January 26, 2006, SightLine issued a press release announcing Hagmeier's role as a director, which stated in part:

> T.J. Farnsworth, SightLine Health CEO and president, said that adding Hagmeier to the company's executive team will have a major effect on the company's expansion goals. "We are extremely excited to add someone of Jeff's credentials. His background and resume show his ability to successfully shape new businesses and create sustainable growth," said Farnsworth. "MRgFUS has the ability to change lives. Imagine having a painful condition treated and going to work the next day, pain-free. That is what this technology offers. Jeff's addition will help us accomplish our goals of providing this treatment to those in need."

(*Id.* ¶ 12.)

Hagmeier alleges that by mid-2006, he "had already made immeasurable contributions to the development, growth and success of SightLine." (*Id.* ¶ 14.) Further, Hagmeier complains that "Farnsworth, both individually and on behalf of SightLine, agreed to compensate Hagmeier for his past and future executive efforts" by promising Hagmeier "an additional equity interest in exchange for continuing to work on behalf of the company." (*Id.* ¶ 17.) Hagmeier contends he fully performed his obligations under "this separate additional equity agreement" and that "Defendants fully accepted the benefit of Hagmeier's time and effort, with the understanding that they had promised to pay for it." (*Id.* ¶ 18.)

In April and May of 2007, Hagmeier alleges that the Defendants reaffirmed "the promised grants of equity" and advised that "counsel for SightLine would prepare a more formal manifestation of the agreements upon receipt of financing from outside investors." (*Id.* ¶ 20(a)–(b).) In January and February 2008, Hagmeier alleges that Defendants made representations to him by e-mail that "Farnsworth was communicating with Sightline's counsel concerning the written formalization of Hagmeier's equity grants." (*Id.* ¶ 20(c).) In February 2009, Hagmeier

alleges that Defendants again represented to him "that the equity grants would be documented shortly." (*Id.* ¶ 20(d).) In August and September 2009, Hagmeier alleges that Farnsworth represented he "would grant Hagmeier the promised equity out of Farnsworth's personal ownership interest if it became necessary." (*Id.* ¶ 20(e).) In November 2009, Hagmeier alleges that Counter Defendants represented by e-mail that "Farnsworth was finalizing the equity grants with the SightLine compensation committee, but that he could not recall the specific 'agreed upon number.'" (*Id.* ¶ 20(f).) In January 2010, Hagmeier alleges that Counter Defendants represented that "Farnsworth was working to immediately document Hagmeier's equity interest in SightLine." (*Id.* ¶ 20(g).)

In October 2010, SightLine informed Hagmeier that he "was no longer a member of the board of SightLine." (*Id.* ¶ 24.) Hagmeier alleges that he "received no compensation from Defendants for his roles as director and executive of SightLine, nor did he ever receive distributions of profits which should have been made to him as an equity stake-holder." (*Id.*)

On October 1, 2010, SightLine filed suit in the 11th Judicial District Court of Harris County, Texas, for a declaratory judgment asking the court to determine the "validity of Hagmeier's claims against SightLine and against Farnsworth." (Pl.'s Original Pet. ¶ 14, Doc. 1-3 at 5.) On November 22, 2010, Hagmeier removed the case to this Court pursuant to diversity jurisdiction. (Def's Notice of Removal, Doc. 1 at 1.) On November 29, 2010, Hagmeier filed his Answer, Counterclaim, and Third-Party Complaint, bringing claims against Farnsworth and SightLine for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, fraudulent inducement, and fraud, and against Baker for tortious interference with contract. (Doc. 3 at 17–27.) SightLine, Baker, and Farnsworth now move to dismiss Hagmeier's counterclaim and third-party complaint. (Docs. 7, 10, and 11, respectively.)

II.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted).  A plaintiff must allege sufficient facts to state a claim to relief that is "plausible" on its face.  *Id.* at 569.  A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

It is the court's responsibility to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.  *Id.*  However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss.  *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 129 S. Ct. at 1949  (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).  In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's

mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Nevertheless, Rule 9(b) requires "more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Adequate scienter requires a plaintiff to "set forth specific facts that support an inference of fraud." *Id.*; *see Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading.") (emphasis in original); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("Although Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint must still afford a basis for believing that plaintiffs could prove scienter"); *cf. Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (requiring plaintiffs who allege fraud "to plead the factual basis which gives rise to a strong inference of fraudulent intent." (internal quotation omitted)).

The Fifth Circuit strictly interprets Rule 9(b) as requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). "Put simply, Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

III.  Discussion

It is fundamental that for a breach of contract claim, there must first have been a valid contract.  *See Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). A valid contract requires: (1) an offer; (2) an acceptance; and (3) consideration.  *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  A contract cannot legally bind the parties unless its material terms are sufficiently clear, certain, and definite.  *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Knowles v. Wright*, 288 S.W.3d 136, 143 (Tex. App.—Houston [1st Dist.] 2009, pet. struck).  Under Texas law, an oral agreement to transfer stock must include: (1) the identity of the company the equity interest would come from; (2) the price of the shares or the value of the equity ownership; (3) the specific quantity of shares and the percentage of ownership; and (4) when the shares would be transferred.  *Knowles*, 288 S.W.3d at 143 n.3, 145, 146; *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795, 802 (Tex. App.—Eastland 2005, no pet.); *but see Bendalin v. Delgado*, 406 S.W.2d 897, 898 (Tex. 1996) (holding that "specific performance is not precluded by the fact that the parties did not fix a price for the stock").

Count I of Hagmeier's Counterclaim and Third Party Complaint against Farnsworth and SightLine is for breach of "an oral agreement in late 2005." (Def.'s Countercl. and Third Party Compl. ¶ 26, Doc. 3 at 17.) Count II of Hagmeier's Counterclaim and Third Party Complaint against Farnsworth and SightLine is for breach of "a separate oral agreement in or around August of 2006." (*Id.* ¶ 32.) Hagmeier points to the following allegations as pleading the existence of an enforceable oral contract:

- Hagmeier agreed to join the board of directors in exchange for a grant of equity in the company.
- To induce Mr. Hagmeier's agreement to join the board of SightLine, Farnsworth, both individually and on behalf of SightLine as CEO, promised Hagmeier that he

- would be granted non- dilutable equity ownership in the company.
- Hagmeier began serving as a director in September 2005.
- Farnsworth, both individually and on behalf of Sightline, agreed to grant Hagmeier a non-dilutable equity interest in SightLine in consideration for Hagmeier becoming one of two founding directors of SightLine.
- To induce Hagmeier to continue to perform senior management functions for SightLine as it implemented its expansion and financing plans, Farnsworth, both individually and on behalf of SightLine, agreed to compensate Hagmeier for his past and future executive efforts on behalf of the company. Defendants specifically agreed to provide Hagmeier with an additional equity interest in exchange for continuing work on behalf of the company.
- After Defendants and Hagmeier entered into this separate additional equity agreement, Hagmeier fully performed his obligations under it.
- Farnsworth, individually and on behalf of SightLine, agreed to grant Hagmeier with an equity interest in consideration for Hagmeier continuing his significant work in managing, operating, and developing SightLine.

(Counter Pl.'s Resp. in Opp'n to Mot. to Dismiss Countercl. and Third-Party Compl., Doc. 8 at 10–11.) These allegations fail to establish the most basic terms of an agreement, such as the amount and value of the equity interest Hagmeier was to receive, when the transfer would occur, and what services Hagmeier was to perform in exchange. Counts I and II for breach of contract must therefore be dismissed.

Count III of Hagmeier's Counterclaim and Third Party Complaint asserts an equitable claim against Farnsworth and SightLine for quantum meruit. (*Id.* ¶ 38.) Quantum meruit is a theory of recovery "based on an implied agreement to pay for benefits received." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). "To recover under the doctrine of *quantum meruit*, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Id.; see also Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008).

Equitable relief is generally barred when a relationship is governed by a valid, enforceable, express contract. *Inglish v. Prudential Ins. Co. of Am.*, 928 S.W.2d 702 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (quantum meruit and unjust enrichment are predicated on absence of express contract controlling the circumstances); *Tiger Truck, LLC v. Bruce's Pulp and Paper, LLC*, 282 S.W.3d 176, 184 (Tex. App.—Beaumont 2009, no pet.) ("Because a valid contract existed, the theory of promissory estoppel does not apply."); *Prince v. Miller Brewing Co.*, 434 S.W.2d 232, 240 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) (same); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement."). Hagmeier claims he had a valid, enforceable, oral contract with Counter Defendants, which would prevent recovery in quantum meruit. However, because the Court finds, as a matter of law, that there was no contract, Hagmeier's quantum meruit claim is not barred.

Count IV of Hagmeier's Counterclaim and Third Party Complaint brings a claim against Farnsworth and SightLine for unjust enrichment. (Def.'s Countercl. and Third Party Compl. ¶ 42, Doc. 3 at 20.) A party seeking to recover against another for unjust enrichment must prove that the other "obtained a benefit from [him] by fraud, duress, or the taking of an undue advantage." *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 921 (Tex. 2010) (quoting *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). However, Hagmeier does not allege duress or the taking of an undue advantage, and, as described below, his allegation of fraud does not survive. This claim must therefore be dismissed.

Count V of Hagmeier's Counterclaim and Third Party Complaint brings a claim against Farnsworth and SightLine for promissory estoppel. (Def.'s Countercl. and Third Party Compl.

¶ 48, Doc. 3 at 21.) To succeed on a promissory estoppel claim, a claimant must prove: (1) that he received a promise; (2) that the promisor could foresee he would rely on the promise; and (3) that he reasonably and substantially relied on the promise to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Promissory estoppel "does not create a contract where none existed before." *Allied Vista, Inc.*, 987 S.W.2d at 141 (quoting *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972)). If a promise is too vague or indefinite, a claimant's reliance on that promise is not reasonable or justified as a matter of law. *Id.* at 142. Hagmeier alleges he is owed money or equity in SightLine under a theory of promissory estoppel because he relied on SightLine's promise "to provide grants of equity." (Def.'s Countercl. and Third Party Compl. ¶ 48.) Given the detailed factual pleadings, including alleged e-mail messages that "Farnsworth was communicating with SightLine's counsel concerning the written formalization of Hagmeier's equity grants," the Court finds that this claim cannot be dismissed. (*Id.* ¶ 20(c).)

Counts VI and VII of Hagmeier's Counterclaim and Third Party Complaint bring claims against Farnsworth and SightLine for fraudulent inducement and fraud, respectively. (Def.'s Countercl. and Third Party Compl. ¶¶ 52–66, Doc. 3 at 21–26.) Under Texas law, Hagmeier must show that the Counter Defendants made (1) a material representation; (2) that was false when made; (3) that the Counter Defendants either knew the statement to be false or made the assertion without knowledge of its truth; (4) that the Counter Defendants intended Hagmeier to act on the statement; (5) that he actually relied upon the statement in so acting; and (6) that he was injured as a result. *Malacara v. Garber*, 353 F.3d 393, 403–4 (5th Cir. 2003). Fraud and fraudulent inducement share the same basic elements. *Ernst & Young, L.L.P. v. Pac. Mut. Life*

*Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).  For the claim to succeed, the claimant must prove that he actually and justifiably relied on the misrepresentation.  *Id.*  Hagmeier's fraud and fraudulent inducement claims fail because he does not allege that SightLine's and Farnsworth's promises of an equity stake were actually false at the time they were made or made without regard to their truth.

Count VIII of Hagmeier's Counterclaim and Third Party Complaint brings a claim against Baker for tortious interference with contract.  (Def.'s Countercl. and Third Party Compl. ¶ 67, Doc. 3 at 26.)  Under Texas law, tortious interference with a contract requires the plaintiff to prove: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998) (per curiam).  Because Hagmeier fails to state a claim for breach of contract, this count must be dismissed.

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Plaintiff SightLine Health, LLC's Motion to Dismiss Defendant L. Jefferson Hagmeier's Counterclaim and Third-Party Complaint and Brief in Support (Doc. 7) and Counter-Defendant T.J. Farnsworth's Motion to Dismiss Counter-Plaintiff Hagmeier's Counterclaim and Third-Party Complaint (Doc. 11) are **GRANTED IN PART** and **DENIED IN PART**.  Hagmeier's Counterclaim for breach of oral contracts (Counts I and II), unjust enrichment (Count IV), fraudulent inducement (Count VI), and fraud (Count VII) are **DISMISSED**.   Hagmeier's counterclaims for quantum meruit (Claim III) and promissory estoppel (Claim V) survive.

The Court further **ORDERS** that Third-Party Defendant William Baker's Motion to Dismiss Defendant Hagmeier's Third-Party Complaint (Doc. 10) is **GRANTED**.  Counter VIII

of Hagmeier's Third-Party Complaint is **DISMISSED**. Third-Party Defendant William Baker is **DISMISSED** from this suit.

The Court further **GRANTS** Hagmeier thirty (30) days to amend his complaint to restate claims for fraud, fraudulent inducement, and unjust enrichment meeting the heightened pleading standards of Rule 9(b).

SIGNED at Houston, Texas, this 26th day of July, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE